# In The

## *Court of Appeals*

## *Ninth District of Texas at Beaumont*

_____

### NO. 09-19-00064-CV
_____

### SAN JACINTO RIVER AUTHORITY, Appellant

### V.

### ERIC YOLLICK, INDIVIDUALLY AND AS PUBLISHER OF THE GOLDEN HAMMER NEWSPAPER, Appellee

**On Appeal from the 284th District Court**
**Montgomery County, Texas**
**Trial Cause No. 17-10-12505-CV**

## OPINION

The Texas Public Information Act (the Act)[1] requires public entities like the

San Jacinto River Authority (SJRA) to make certain information publicly available

after receiving a written request seeking access to it unless they ask the Attorney

General to approve withholding the information or show the Attorney General has

---

[1]*See* Tex. Gov't Code Ann. §§ 552.001-.376 (Texas Public Information Act).

1

already reviewed the information that was requested and determined the information is subject to an exception to disclosure under the Act.[2] But the Act also penalizes public entities should they fail to handle requests for information regulated by the Act in the manner the Act requires. The Act does that by prohibiting the entity from relying on most of the exceptions to the disclosure obligation in the Act should the entity be sued by someone who sought access and who then seeks to enforce the requirements of the Act when the entity refused to permit access to the information after the entity did not comply with its duties under the Act.[3] And if the Act requires disclosure, the public entity must disclose the "complete information" covered in the request.[4]

This appeal concerns the trial of a case filed by Eric Yollick against the SJRA in which he claimed the SJRA failed to handle his request in accord with its duties under the Act. The trial court found the SJRA did not handle his request properly and then signed a judgment that requires the SJRA to disclose most of the information in a document the parties call the SJRA's Emergency Action Plan (the Plan). The trial court also found a compelling reason exists that allows the SJRA to

---

[2]*Id*. § 552.021 (Availability of Public Information); *id*. § 552.301 (Request for Attorney General Decision).

[3]*Id*. § 552.326 (Failure to Raise Exceptions Before Attorney General).

[4]*Id*. § 552.001.

2

continue to withhold some of the information in the Plan and to continue to withhold that specific information from Yollick. To prevent Yollick from accessing that information, the trial court ordered the SJRA to redact certain information from its Plan before allowing Yollick to see a copy, listing that information by page and paragraph where the information to be redacted exists in the Plan. In its appeal, the SJRA does not argue the Plan is not information regulated by the Act.[5] Instead, the SJRA claims the evidence in the trial conclusively established it had complied with its duties to Yollick under the Act after receiving his request. It argues it complied with its duties for two reasons. First, the SJRA asserts the evidence shows it received a request seeking the Plan a week before it received Yollick's request from Bradford Laney, who asked the SJRA for access to the Plan. The SJRA referred Laney's request to the Attorney General's Office and asked that office to decide whether exceptions in the Act authorized the SJRA to withhold the Plan when responding to Laney's request. Second, the SJRA asserts the evidence in the trial shows the Attorney General, when responding to requests for information other than Yollick's,

_____

[5]Act of May 12, 1937, 45th Leg., R.S., ch. 426, § 2, 1935-1937 Tex. Gen. Laws Supp. 861 (creating the San Jacinto River Conservation and Reclamation District as a public entity and delegating to it the authority otherwise reserved for governmental agencies); *see also Tri-City Fresh Water Supply Dist. No. 2 of Harris Cty. v. Mann*, 142 S.W.2d 945, 948 (Tex. 1940) (noting that the powers of a public entity "are measured by the terms of the statutes" governing the entity); Tex. Gov't Code Ann. § 552.002 (Definition of Public Information).

3

found the Plan to contain information that is excepted from disclosure requirements of the Act. As further support for its argument claiming the judgment should be reversed, the SJRA claims the trial court misinterpreted the Act when it applied the Act to the evidence admitted at trial.

We conclude the SJRA's arguments lack merit. For the reasons explained below, we affirm.

## Background

In August 2017, following Hurricane Harvey, information about how the SJRA operates the Lake Conroe Dam became a topic of interest in Southeast Texas when the hurricane stalled in the area and caused widespread flooding.[6] In September 2017, Eric Yollick, a resident of Montgomery County and the publisher of an internet blog, THE GOLDEN HAMMER, sent the SJRA an email asking that it provide him with certain information about its operations at the Lake Conroe Dam, information that included the SJRA's flood control plans over the ten-year period ending September 2017. The SJRA retained an attorney, Mitchell Page, to respond to Yollick's email. Page responded to Yollick's request in a letter on October 11, 2017. In the letter, Page advised Yollick that the SJRA would not allow Yollick to

---

[6]*See Major Hurricane Harvey – August 25-29, 2017*, National Weather Service, https://www.weather.gov/crp/hurricane_harvey (last visited Feb. 26, 2021).

4

access the information covered in his request. He explained the only information the SJRA has that addresses the information covered in Yollick's email consisted of information in its Plan. Page advised Yollick the SJRA would not comply with his request because it had referred another request for the Plan, which it had received a week earlier, to the Attorney General's Office and asked the Attorney General to authorize the SJRA to withhold the Plan from Laney in response to his request.

When Page informed Yollick that the SJRA was withholding the information he asked for in his email, he also sent Yollick a copy of the letter that he sent to the Attorney General's Office on October 4, the letter that references Laney's request. In Page's October 4 letter to the Attorney General's Office, Page asked the Attorney General to authorize the SJRA to withhold the Plan from Laney based on the exceptions he identified that he asserted authorized the SJRA to withhold the Plan form the public under the Act. According to Page's letter to the Attorney General, the Plan may be withheld because it contains information that qualifies as confidential information under the Act and because it is related to litigation the Authority faces over the manner it operated the Lake Conroe Dam following Hurricane Harvey.[7]

---

[7]Tex. Gov't Code Ann. § 552.101 (Exception: Confidential Information); *id.* § 552.103 (Exception: Litigation or Settlement Negotiations Involving the State or a Political Subdivision).

In October 2017, Yollick sued the SJRA in Montgomery County after the SJRA notified him that it was refusing to comply with his request. In his Original Petition, Yollick claimed the SJRA failed to refer his request to the Attorney General and that when it did so, it did not have a previous determination from the Attorney General authorizing it to withhold the information in his request.

In February 2019, the parties tried the disputed issues to the bench. Following the trial, the trial court signed a final judgment, which requires the SJRA to allow Yollick to access most but not all the information in the Plan. The trial court allowed the Authority to keep withholding certain information from Yollick that is in the Plan after finding a compelling reason to do so existed based on the information the trial court reviewed after conducting an in-camera inspection of the SJRA's Plan.

## The Trial

Only two witnesses were called to testify in the trial. Yollick called both witnesses when he presented his case-in-chief. Yollick was his first witness. He testified that he sent the SJRA an email in September 2017 and asked that it provide him with access to the following based on its duties to him under the Act:

1. The 'carefully prepared engineering plan' to which [the SJRA's] September 8, 2017, Press Release ("SJRA Responds to Lawsuit Regarding Hurricane Harvey Flooding") referred[.]
2. All engineering plans since October 1, 1994, [the SJRA] has prepared or had prepared for it for the operation of the Lake Conroe dam with

6

respect to mitigation or reduction of downstream peak flows as water has passed through Lake Conroe from the San Jacinto River.

3. All flood control plans [the SJRA] has developed since August 28, 2007.

Yollick also testified that Page responded to his email in a letter dated October 11, 2017. Yollick introduced the letter into evidence. Page's letter to Yollick states: "The SJRA has already requested a decision from the Attorney General as to whether all or part" of the Plan is subject to exceptions to a public entity's disclosure obligations under the Act.

During his testimony, Yollick also sought to distinguish between the information he wanted to see and the information he thought might be relevant in the lawsuits filed against the SJRA in Harris County. The pleadings in those suits, which Yollick offered into evidence, reflect that various plaintiffs have sued the SJRA for damages to their respective properties that they allege arose from the manner the SJRA conducted its operations at the Lake Conroe Dam following Hurricane Harvey. Yollick suggested the information he seeks from the SJRA is different from the information relevant to the lawsuits the Authority is facing seeking to recover damages to real and personal property because the information he seeks does not include claims for damages to properties lying in Harris County. Yollick testified that unlike the evidence relevant in the Harris County cases, the information

he seeks relates only to the downstream effects of water that is released from the Lake Conroe Dam.

Yollick also acknowledged that, before the trial, Page provided him with a copy of a letter the SJRA sent to the Attorney General's Office in April 2017. Yollick offered the April 19, 2017, letter into evidence. It shows the SJRA, through Page, asked the Attorney General's Office to authorize the SJRA to withhold information that Page's letter referring the matter to the Attorney General described as "certain information" without providing any other significant way to identify the information the Attorney General's Office reviewed. The only other information in the letter informative about what document or documents Page asked the Attorney General's Office to review as it relates to the April 19 letter from the Attorney General is that the person who had asked the SJRA for information had requested access to "the complete dam release protocol" for the Lake Conroe Dam.[8] Thus, whether the Plan is among those documents the Attorney General's Office reviewed in April 2017 and among the document or documents the Attorney General authorized the SJRA to withhold is unclear from the information the Attorney General included in the

---

[8]The Attorney General's Office's letter cites sections 418.181 and 552.101 of the Government Code. *Id*. §§ 418.181, 552.101. Section 418.181 provides that "[t]those documents or portions of documents in the possession of a governmental entity are confidential if they identify the technical details of particular vulnerabilities of critical infrastructure to an act of terrorism."

letter. And in the trial, no one called any witnesses to identify what documents the Attorney General's Office reviewed or later authorized the SJRA to withhold based on the Attorney General's letter ruling in April 2017.

James Napolitano is the only other witness who testified in the trial. Napolitano was never asked to address how the SJRA handled Yollick's request. The record shows Napolitano testified in the case as an expert on matters involving security. He explained that, during his career, he has helped industry mitigate the risks of emergencies by preparing for them with emergency plans. He testified planning like this typically involves structures the government has classified as a critical structure because such structures require those who control them to take special precautions to harden them against the risk of attack. Napolitano testified he currently owns a consulting business, which he said consults with clients who run businesses that have concerns about security issues in their industries. Before becoming the owner of that business, Napolitano testified he worked for the Secret Service, Homeland Security, and as the City of Montgomery's Chief of Police.

On cross-examination, Napolitano agreed he has no experience preparing emergency plans for dams. He agreed his experience with emergency plans is limited to consulting with industries that lie along the ship channel. In those facilities, he acknowledged, the primary risk concerns risks attendant to explosions. Asked to

9

address what information is generally in a facility's emergency plans, Napolitano stated such plans often contain information describing "what would happen if the critical infrastructure [were to be] attacked."

In final argument, Yollick suggested the evidence in the trial established the SJRA failed to handle his request in the manner required by the Act. He pointed out that the SRJA never referred his request to the Attorney General's Office or asked that office to approve withholding the exact information he was asking for the SJRA to allow him to see. And Yollick argued that when the SJRA refused to comply with his request, it already had a determination from the Attorney General's Office that applied to the same information covered by his request.[9] Yollick also suggested the information he seeks is unrelated to the issues in the lawsuits filed against the SJRA in Harris County.[10] Finally, Yollick argued the information he seeks differs from the

---

[9]*See id.* § 552.302 (Failure to Make Timely Request for Attorney General Decision; Presumption That Information is Public); *id.* § 552.326 (providing a penalty of waiver should the public entity ignore the duties the Act imposes on them in their handling of requests for information regulated by the Act).

[10]We note the record shows that Yollick is not a party or an attorney of record in the cases against the Authority in Harris County. Yet the pleadings in those cases, which were admitted into evidence in the trial, show the downstream effects of releasing water from the Lake Conroe Dam is related to the issues involved based on the pleadings before us that concern those lawsuits. We may take judicial notice of geographical facts, so we judicially notice that Harris County is downstream from the Lake Conroe Dam. *Office of Pub. Util. Counsel v. Pub. Util. Comm'n of Tex.*, 878 S.W.2d 598, 600 (Tex. 1994) ("A court of appeals has the power to take judicial

information covered by the requests of others because the information he wants includes no information about "the technical operation of the dam[.]"[11]

In closing argument, the SJRA argued that based on the evidence showing how it responded to Yollick's request, the court should find that the SJRA complied with its duties to Yollick under the Act. The SJRA also suggested the evidence reveals that the Attorney General had made a previous determination under the Act that applies to the Plan before the SJRA denied Yollick's request. Finally, the SJRA argued all it needed to prove to show it complied with the Act was to show it referred someone's request seeking the Plan to the Attorney General's Office on any date before the trial of Yollick's suit.

Before the trial court retired to deliberate its verdict, it asked the attorneys whether a difference existed between a ruling addressing the Plan as a whole and one requiring the SJRA to disclose just the pages and paragraphs of the Plan not subject to exceptions under the Act under the evidence admitted during trial. In response, the SJRA's attorney suggested the SJRA could not segregate the

---

notice for the first time on appeal."); *see also* Tex. R. Evid. 201(b) (allowing a court to judicially notice a fact that is not subject to reasonable dispute).

[11]In its judgment, the trial court found that "Eric Yollick modified his request [during the trial] to specifically exclude any information which identifies the technical details of the Lake Conroe Dam[.]"

11

information in its Plan and produce just that body of information for which no exception in the Act applied.

The trial court also questioned whether the SJRA handled Yollick's request in accord with the duties it had to Yollick under the Act. For example, the trial court noted it did not appear to the court the information Yollick had asked to see in his email necessarily covered the same information in a request seeking the "complete dam release protocol" for the Lake Conroe Dam. Since at that point in the trial the trial court had not yet seen the Plan, the trial court ordered the SJRA to produce the Plan for an in-camera inspection. After inspecting the Plan in camera, the trial court rendered its verdict, which requires the SJRA to produce the information the SJRA has complained about in this appeal.

Issues

The SJRA raises one issue in its brief to claim the evidence in the trial conclusively established that it complied with its duties to Yollick under the Act. It concludes that because it did so, it did not have to refer Yollick's request to the Attorney General because the Attorney General's Office has ruled that the Plan contains information excepted from disclosure under the Act.[12] The SJRA also

---

[12]In the appeal, the SJRA has not argued the trial court made errors to justify granting it another trial.

argues the trial court misinterpreted the Act by requiring it to prove the Attorney General's Office decided the Plan is subject to the Act's exceptions before October 11, 2017, the day it refused to comply with Yollick's request.

Standard of Review

In its brief, the SJRA suggests a de novo standard applies to our resolution of the issues it raises in its appeal. We agree a de novo standard applies to the SJRA's claim the trial court misinterpreted the Act when applying it to the facts the trial court proved in the trial.[13] In construing a statute, our goal is to give the statute the meaning the legislature intended the statute to have. We do so by looking to the plain and common meaning of the words used in the statute, along with any definitions of the words the statute may provide.[14]

But besides arguing the trial court failed to properly interpret the Act, the SJRA also claims it proved it complied with the duties the Act imposed in handling Yollick's request. Deciding how the standards of review apply to that claim requires us to examine the statute. Under the Act, when someone sends a public entity a request for information that is covered by the Act and the entity fails to handle the

---

[13]*See Johnson v. City of Fort Worth*, 774 S.W.2d 653, 655-56 (Tex. 1989) (reflecting a de novo standard applies to reviewing a lower court's interpretation of a statute).

[14]*Id.*

13

request in the manner set out in the Act, the person who asked for access to the information may file suit.[15] To do so, the Act provides that a person may enforce the entity's obligations under the Act by applying for "a writ of mandamus compelling [the public entity] to make information available for public inspection if the [public entity] refuses to request" a determination from the Attorney General "or refuses to supply public information . . . that is not excepted from disclosure" under exceptions in the Act. Generally, the Act favors giving citizens access to *public information*, which is information we will describe as information regulated by the Act, if the public entity has a duty to disclose it under the Act.[16]

The Act also penalizes public entities should they ignore the duties created by the Act as they relate to handling someone's written request for information regulated by the Act.[17] The manner public entities must handle such requests is straightforward. It simply requires public entities that wish to withhold information upon receiving a written request to (1) refer the request to the Attorney General and

---

[15]Tex. Gov't Code Ann. § 552.321 (Suit for Writ of Mandamus).
[16]*Id.* § 552.021 (requiring a public entity to make *public information* available "to the public at a minimum during normal business hours").
[17]*Id.* § 552.301(a) (creating the requirement that obligates public entities to take certain steps when they wish to withhold public information the Act allows the public to access from the public); *id.* § 552.326 (penalizing a public entity should the entity fail to take the steps proscribed by the Act when handling a citizen's written request for information subject to the Act).

14

explain to the Attorney General what exception or exceptions in the Act applies to the information the entity has been requested to allow the person to see, unless (2) the Attorney General's Office has made a "previous determination about whether the information falls within one of the exceptions."[18]

When the trial court reduced its verdict to writing, it provided the parties even though no one requested that it do so with findings of fact and conclusions of law, several of which are directly relevant to arguments the SJRA has raised in its appeal. For convenience of discussing the findings, we will simplify and summarize some of the core findings directly relevant to resolving the argument the SJRA raises in its appeal. The core findings in the trial court's judgment show it found:

(1) The SJRA failed to seek a determination from the Attorney General about whether exceptions in the Act applied to the Plan;
(2) At trial, the SJRA failed to prove it had determination from the Attorney General that applied to the Plan when, on October 11, 2017, the SJRA informed Yollick that it would not comply with his request;
(3) After inspecting the Plan in camera, the trial court found a compelling reason justified allowing the SJRA to continue to withhold certain information in the Plan from Yollick even though the SJRA failed to prove it handled Yollick's request in accord with the obligations triggered by Yollick's email asking to see information in the SJRA's Plan; and
(4) During the trial, the SJRA failed to prove the letters the Attorney General's Office sent that are in evidence constitute to a *previous determination* as required by the Act with respect to Yollick's request.

---

[18]*Id.* § 552.301(a).

After learning the trial court had signed the judgment, neither party asked the trial court to provide them with any more findings.[19]

While this is an appeal from a statutory mandamus proceeding, we do not treat the findings the trial court made following the trial any differently than those trial courts make when they decide other civil cases that the parties chose to try to the bench.[20] In its brief, the SJRA has not argued the evidence is factually insufficient to support the trial court's verdict. Instead, it contends the evidence about whether it complied with the duties it owed Yollick under the Act in handling his request was so overwhelming the trial court could have reached only one conclusion, that is that

_____

[19]*See* Tex. R. Civ. P. 296 (allowing parties to request the trial court to reduce its findings to writing); *id*. 289 (allowing the parties to request additional or amended findings). While Rule 299a of the Texas Rules of Civil Procedure instructs trial courts not to recite findings in judgments, the trial court did so here. Yet no party complains about that in the appeal. That said, a conflict exists among the intermediate courts of appeals about whether findings erroneously included in a trial court's judgment are findings the appellate court should consider in deciding the appeal. In this Court, our practice is to consider the findings if the parties have not complained the trial court erred by including them in the judgment and if they do not conflict with the verdict the trial court reached in the trial. *See In re Estate of Jones*, 197 S.W.3d 894, 899-900 n.4 (Tex. App.—Beaumont 2006, pet. denied) (listing cases from various courts of appeals showing the conflict and explaining this Court's practice). Here, even if we were to abandon our own precedent and ignore the trial court's findings, we would still have to imply findings consistent with the findings we summarized above. *See Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex.1990) (explaining that appellate courts are to imply all findings supported by the evidence needed to affirm the judgment when no one files a request in the trial court for findings).

[20]*Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991).

16

it complied. To support that claim, the SJRA relies on four letters in evidence to claim the evidence is so overwhelming to show that it conclusively proved that it handled Yollick's request in accord with its duties to him under the Act.[21]

To resolve the appeal, we must decide whether the SJRA bore the burden of proof in the trial to prove it handled Yollick's request properly. We conclude that it did have the burden of proving that claim based on the structure and requirements in the Act.[22] And because it bore the burden of proof on that issue, to prevail in the appeal it must establish the evidence allowed the trial court to reach just one conclusion based on the evidence in the trial.[23]

Analysis

The trial court's findings reflect the court viewed the evidence as having created a fact issue about whether the SJRA handled Yollick's request properly under the Act.[24] The Act sets forth a two-step process: an initial determination about

---

[21]*See* Tex. Gov't Code Ann. §§ 552.101, .103, .301(e)(1)(A).

[22]*See id.* § 552.301 (requiring proof of a previous determination); *id.* § 552.302 (creating a presumption that the information the person requested is public information if the entity ignores its duties under the Act); *id.* § 552.326(a) (generally prohibiting public entities from relying on exceptions in subsections 552.101-.160 if the entity did not comply with its duty and refer the request to the Attorney General).

[23]*See Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001) (describing standard of review that applies to a claim the evidence conclusively establishes a claim on which the party had the burden to prove in the trial).

[24]*See* Tex. Gov't Code Ann. § 552.301(a).

whether the request someone sent the public entity is subject to an exception to disclosure under the Act, and then—if the entity claims it may withhold the information and if the Attorney General's Office has not already issued a letter ruling that addressed the same information covered in the person's request—the entity must refer the request to the Attorney General's Office to allow the Attorney General to rule on whether the entity may withhold the information from the person based on one or more of the exceptions the entity relied on when it explained why it refused to provide the information that is responsive to the request.[25]

The SJRA argues the evidence allowed the trial court to reach only one conclusion, that it handled Yollick's request in a manner consistent with the duties it had to Yollick under the Act. We disagree the evidence rises to that level. First, the SJRA does not dispute Yollick's claim that the SJRA did not refer his request to the Attorney General. Thus, only two questions remain. First, did the SJRA conclusively prove the Act excused it from referring Yollick's request to the Attorney General because it had a prior ruling covering the same information based on another request?[26] Second, did the SJRA conclusively prove that the prior ruling from the Attorney General when it informed Yollick that it would not allow him to

[25]*Id.*
[26]*Id.*

18

see the information he was seeking because the information he asked to see is located in its Plan?[27]

In its brief, the SJRA points to four letters to argue the evidence relevant to the above question is so overwhelming that no reasonable factfinder could have found that the Attorney General's Office had not ruled that it could withhold the same information covered by Yollick's request. The letters it relies on are a letters Page sent to the Attorney General on October 4, 2017, and three letters the Attorney General sent to Page, one before October 11, 2017, and two after October 11, 2017. We address the information in these letters in chronological order, beginning with the letter the Attorney General's Office sent to Page in April 2017.

So does the April 2017 letter provide conclusive proof showing the SJRA had determined that the SJRA could withhold the same information from someone else covered by Yollick's request? To decide that question, we must look to the record and see whether the information in the letter together with the other evidence in the trial communicates a decision by the Attorney General's Office that applies to the information at issue in the appeal.[28]

---

[27]*Id.*
[28]*Id.*

First, we note that the Act requires the Attorney General's Office to have made a *previous determination* to excuse a public entity from its duty of referring requests seeking for permission to access information regulated by the Act.[29] While not specifically defined in the Act, what *previous* means under the Act is not ambiguous, given (1) the Act's objectives, (2) the circumstances under which the Act was enacted, (3) the Act's legislative history, (4) the common law, former law, and similar provisions, (5) the consequences of the trial court's construction of the Act, and (6) the titles in the various sections of the Act we have relied on to resolve the appeal.[30] When courts construe the terms used in a statute, they "give effect to every provision and ensure that no provision is rendered meaningless or superfluous."[31] Terms not specifically defined are considered to have the meaning assigned to them by the rules of grammar and the meaning a word has as commonly used.[32]

We look to Webster's Dictionary for common meanings. It defines *previous* as meaning "going before, leading the way, going or existing before in time."[33] The

---

[29]*Id.*

[30]*Id.* § 311.023 (Statute Construction Aids); *see also In re Canales*, 52 S.W.3d 698, 702 (Tex. 2001).

[31]*Leordeanu v. Am. Prot. Ins. Co.*, 330 S.W.3d 239, 248 n.35 (Tex. 2010).

[32]*See* Tex. Gov't Code Ann. § 311.011(a).

[33]WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1798 (2002) (examples omitted).

same dictionary defines *determination* as "the settling and ending of a controversy."[34] Since the Attorney General's letter is dated April 2017, which is before October 11, 2017, we do not question that it is conclusive proof of some prior ruling. But is the April 2017 letter along with the other evidence in the record conclusive proof showing the Attorney General's Office communicated a decision applicable to the same information at issue in the appeal? We think the answer is no. No witnesses testified in the trial about what documents the Attorney General's Office even reviewed before it issued its letter of April 2017. And no witnesses described whether the exceptions the Attorney General's letter ruling decided applied to the Plan even covered the Plan, much less the parts of the Plan now at issue in the appeal. The April 2017 letter simply does not sufficiently identify what documents the SJRA asked the Attorney General's Office to review; instead, the letter states the SJRA asked the Attorney General to review "certain information" to decide whether the SJRA could withhold its "complete dam release protocol" in response to a request seeking the complete protocol based on Page's representation that was the information covered by someone's request. We conclude the description

---

[34]WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 616 (2002) (examples omitted).

in the letter identifying what documents the ruling applies to is insufficient to offer conclusive proof to establish the letter refers to Plan.

The second letter the SJRA relies on to support is appeal is Page's letter to the Attorney General dated October 4, 2017. To be sure, Page's letter to the Attorney General does refer the Attorney General's Office to the SJRA's Plan. Page's letter also states the Attorney General's Office had reviewed the Plan and agreed it contains confidential information and allowed the SJRA to withhold the Plan in response to an earlier request. Yet since the SJRA must establish the evidence is conclusive on its claim the Attorney General made a previous determination about the information covered in Yollick's email, the question is not whether Page's letter offers some evidence from some other factfinder might have ruled in the SJRA's favor in a trial over whether the SJRA complied with the duties it has to members of the public in responding to requests seeking information regulated by the Act. For two reasons, we conclude the answer to Page's October 4 letter does not rise to the level of conclusive proof showing the Attorney General had issued a previous ruling that applies to the same information at issue in the appeal.

First, as the trier of fact, the trial court had the right to give the statements in Page's letter of October 4, 2017 little to no weight since the statements in his letter

are hearsay.[35] When trial courts act as triers of fact, they may decide how much weight to assign the evidence admitted during a trial.[36] And the statements in Page's letter about what the SJRA viewed in the April 2017 letter ruling to mean are not just hearsay, they are double hearsay given that Page did not testify in the trial.[37] So we cannot say the trial court's only choice in deciding how to weigh Page's letter but to accept the representations in the letter as conclusive proof.[38] Since Yollick was the prevailing party in the trial, we must assume the trial court exercised its discretion by giving Page's letter any or little credit when it resolved the disputed issues of fact in the trial.[39] As the factfinder, that was the trial court's prerogative even if the statements in the letter were never contradicted or impeached.[40] And the

---

[35]Tex. R. Evid. 801(d).

[36]*Wilson*, 168 S.W.3d at 802.

[37]*See* Tex. R. Evid. 602.

[38]*See Dallas Morning News, Inc. v. Hall*, 579 S.W.3d 370, 378 (Tex. 2019) (declining to assign double hearsay in an affidavit any weight); *Wiggins v. Overstreet*, 962 S.W.2d 198, 201-202 (Tex. App.—Houston [14th Dist.] 1998, pet. denied) (concluding that hearsay in letters could not serve as conclusive proof); *Catherman v. First State Bank of Smithville*, 796 S.W.2d 299, 302 (Tex. App.—Austin 1990, no writ) (same).

[39]*See City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005) (explaining that when courts review evidence in the light favoring the factfinder's verdict, it must assume the factfinder "credited testimony favorable to the verdict and disbelieved testimony contrary to it"); *id.* at 820 (noting that factfinders "may disregard even uncontradicted and unimpeached testimony" in trials unless it "is conclusively negated by undisputed facts").

[40]*Id.*

SJRA produced no evidence to corroborate the statements in Page's letter, as the SJRA did not call any witnesses in the trial.

Second, Yollick pointed out that he was not seeking all the information in the Plan, suggesting that the fact the request he made represents a request for information different in degree and kind from one seeking a complete protocol for a dam. Of course, we acknowledge that a factfinder's decision to assign little or no weight to some of the evidence in a trial must be reasonable under the circumstances shown in the record.[41] But here, we cannot say the trial court's decision to assign Page's letter little to no weight was unreasonable under the circumstances shown here and given the trial court's role as the arbiter of the facts. For instance, the Attorney General's letter of April 2017 warns the SJRA it cannot rely on the April 2017 letter ruling should the facts or circumstances relevant to some future request change. The warning states:

> This letter ruling is limited to the particular information at issue in this request and limited to the facts as presented to us; therefore, this ruling must not be relied upon as a previous determination regarding any other information or any other circumstances.

In comparing the information Yollick argued his request covers and comparing it to the information covered by a request for complete protocol for a dam, the trial court

---

[41]*Id.*

could have reasonably concluded on this record that the circumstances of the request reached information relevant to exceptions the Attorney General had never been asked to address based on the testimony the trial court found to be credible in the trial. Simply put, Yollick make it clear that he was asking for less than all the information in the Plan. It's also unclear on this record whether the April 2017 letter constitutes a ruling that even addresses whether exceptions in the Act apply to the information at issue in the appeal.

The SJRA relies on two other letters admitted into evidence during the trial to support its claim that the record proves the Attorney General's Office had determined the SJRA could withhold the Plan. But the remaining two letters the SJRA relies on, letters from the Attorney General to Page in November and December 2017, are dated after October 11, 2017. Under section 552.301 of the Act, the requirement of a *previous determination* means one before the public entity refused to comply with someone's request for information regulated by the Act.[42] The ten-day deadline is in section 552.301, and since we construe statutes based on the intended meaning, the date relevant to deciding whether something is previous

---

[42]Tex. Gov't Code Ann. § 552.301(a) (requiring previous determination); *id.* § 552.301(b), (d) (providing ten-day deadlines for the referral and an explanation to the person who requested the information to explain the entity is awaiting a decision from the Attorney General on the information covered by the request).

under the Act is measured by the deadline the Act established for the public entity to respond to the citizen's request seeking information regulated by the Act.[43] By placing the duty of referral and deadline to respond in the same section, it's clear to us that the term *previous determination* means a determination before the deadline requiring the entity to explain to the person seeking access to regulated information why the information is being withheld.[44]

## Conclusion

We disagree with the SJRA's claim that the record contains legally insufficient evidence to support the trial court's judgment. We also disagree with the SJRA that the trial court misinterpreted the Act.[45] For these reasons, the trial court's judgment is

AFFIRMED.

_____
HOLLIS HORTON
Justice

Submitted on August 17, 2020
Opinion Delivered March 18, 2021

Before Golemon, C.J., Horton and Johnson, JJ.

---

[43]*Id.*
[44]Tex. Gov't Code Ann. § 552.301(a).
[45]*See id.* § 552.326.